CATERPILLAR TRACTOR CO., et
al., Appellants,

v.

Sammy BOYETT, et al., Appellees.

No. 13–82–405–CV.

Court of Appeals of Texas,
Corpus Christi.

April 12, 1984.

Appellees Motion for Rehearing
Granted with Opinion May 17, 1984.

Appellants Rehearing Denied
May 17, 1984.

Appellant's Second Motion for
Rehearing Overruled June 14, 1984.

Robert C. Floyd, Richard A. Sheehy, Butler & Binion, Houston, for appellants.

Ernest H. Cannon, Houston, Russell McMains, Edwards & Perry, Corpus Christi, for appellees.

Before KENNEDY, BISSETT and GONZALEZ, JJ.

## OPINION

KENNEDY, Justice.

This is a products liability case. As a result of being run over by a Model 950 Wheel Loader, manufactured by appellant, appellee suffered severe personal injuries. Appellee brought suit against appellant and several other defendants to recover damages resulting from the occurrence which is the subject matter of this lawsuit. Either through settlement or instructed verdicts, all the defendants except for appellant were removed from the litigation and are not parties to this appeal. In response to the special issues the jury found appellant liable for the appellee's injuries and awarded him damages totaling $4,110,-545.97. We modify and affirm.

The plaintiff was a welder employed by Brown & Root, Inc. and working at the South Texas Nuclear Project in Matagorda County, Texas on October 10, 1977. On that day, a Model 950 Wheel Loader, manufactured by appellant and owned by Brown & Root, Inc., was being operated by one Jesse Bonnett, also an employee of Brown & Root, Inc. Mr. Bonnett's job on that day was to haul materials down an incline with the wheel loader. The Model 950 Wheel Loader is a rubber-wheeled vehicle weighing approximately 26,000 pounds and capable of hauling up to 8,000 pounds of material in its front-mounted scoop or bucket. On one of his trips down the incline with a full load of materials, Bonnett lost control of the wheel loader and ran over the appellee, immediately rendering him a total paraplegic below level T–11 of his spine. Bonnett testified that, as he started down the incline, the wheel loader lost its brakes and steering, and would not shift into reverse.

Appellees' trial pleadings were to the effect that appellant had defectively designed the Model 950 front-end wheel loader by: failing to include an automatic/manual emergency braking system; failing to include an audible warning buzzer, indicating potential brake system failure; failing to provide a visual warning light, indicating potential brake system failure; designing a steering system dependent on engine RPM's; designing a system wherein the depression of the left brake pedal and the parking brake neutralize the transmission; designing a system that did not guard against failure in the air system between and including the compressor and the split-air reservoir; designing a steering system that lacked a supplemental system.

The following special issues and the jury's answers thereto establish appellant's primary liability:

### SPECIAL ISSUE NO. ONE

Was the Caterpillar 950 Wheel Loader defectively designed at the time it left the possession of the Caterpillar Tractor Company?

ANSWER: Yes

A "defectively designed" product is a product that is unreasonably dangerous as designed, taking into consideration the

utility of the product and the risk involved in its use.

### SPECIAL ISSUE NO. TWO

Was the defective design a producing cause of the occurrence in question? ANSWER: Yes

### SPECIAL ISSUE NO. THREE

At the time the Caterpillar Tractor Company sold the Caterpillar 950 Wheel Loader in question did it fail to give adequate warnings of the dangers or adequate instructions for safe use with respect to the product?
ANSWER: No

In its first and second points of error, appellants allege that there was no evidence or, alternatively, insufficient evidence to support the jury's findings on Special Issues No. 1 and 2. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex. Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

What this Court must determine from the evidence is whether or not there was sufficient evidence to support the jury's findings that the Model 950 Wheel Loader was defectively designed. The operator of the wheel loader at the time of the appellee's injuries, Jesse Bonnett, testified that when he started work on the morning of October 10, 1977, the brakes on the wheel loader were working properly. He stated that, after a couple of trips down the incline, the brakes began to feel "funny," and he so informed his foreman who told him to continue working. On his very next trip down the incline, Bonnett experienced a total brake, steering and transmission failure, causing him to lose control of the vehicle and resulting in his running over appellee. Bonnett testified he was traveling approximately twenty-five miles an hour, when he ran over the appellee. He noticed no steering or transmission problems prior to the accident. He testified that he attempted to use both brakes, the emergency brake and the transmission to stop the machine, but none of these devices worked.

James Kettredge was another Brown & Root, Inc. employee working at the accident site. He observed the wheel loader as it proceeded down the incline. He stated that he saw the operator try to stop the machine, but that it kept accelerating.

The next witness for the appellee was Dr. Walter Reed, a professor of engineering at the University of Texas, testifying as an expert for the appellee. Dr. Reed testified that he had thoroughly examined the wheel loader in question and all of its technical data. He observed that the model wheel loader in question had no emergency back-up brake or steering system. He also opined that the emergency brake would not stop the vehicle once it was in motion. Dr. Reed then reviewed the existing brake, steering and transmission systems employed in the subject vehicle. The court then received into evidence Plaintiffs' Exhibit 23 which was a purported design by Dr. Reed of an emergency back-up brake system for the 950 Wheel Loader. Dr. Reed testified that the type of emergency back-up brake system represented by Plaintiffs' Exhibit 23 was feasible and installable in the 1969 950 Wheel Loader. He then opined that the 1969 950 Wheel Loader which ran over the plaintiff was defectively designed and unreasonably dangerous due to the lack of an emergency back-up brake system. He further opined that the lack of a warning device that the brakes had failed also contributed to the appellee's injuries.

Jim Hasten, a brake system engineer for appellant, was called by appellee as an adverse witness. He testified that an emergency back-up brake system was used by appellant on some of its 1969 wheel loaders, but not on the Model 950. He further testified that at the time that the particular 950 in question was manufac-

tured, appellant had the knowledge to install an emergency braking system in the Model 950. Mr. Hasten was next shown Plaintiffs' Exhibits 28–30. These three exhibits were copies of National Safety Reports on front-end loader accidents, dated 1965, 1963, 1966, respectively. Each of these articles listed brake failure as a cause of accidents in this type of equipment. Mr. Hasten acknowledged that appellant was aware of these reports and that they were authoritative. Mr. Hasten also testified that Plaintiffs' Exhibit 23 was copied directly from a Caterpillar Service Manual.

The appellants' defensive testimony consisted primarily of the testimony of three witnesses to the effect that nothing was wrong with the brakes on the wheel loader in question. Joe Williams was a brake expert working for Shilstone Testing Laboratories who was asked to examine the subject vehicle. He testified he tested the vehicle on the afternoon of October 12, 1977, and that the vehicle worked perfectly under all conditions. Next, William Frankos, an equipment supervisor for Brown & Root, Inc., testified that he examined the vehicle one and a half hours after the accident and that the brakes worked fine. He further testified he checked the brakes again on the day after the accident (October 11, 1977) and again the brakes worked perfectly. Finally, Floyd Johnson, another equipment supervisor for Brown & Root, Inc., testified that he tested the brakes on the subject equipment immediately after the accident and found nothing wrong.

It was disclosed during the cross-examination of Franklin Parmely, the Safety and Health Manager at the site for Brown & Root, Inc., that 17 hours of repairs were done to the wheel loader on the evening of October 12, 1977, and that 31 hours of repairs were performed on October 13, 1977 (Plaintiffs' Exhibit 11). Mr. Parmely did testify that the reports he received from the tests made on the vehicle after the accident indicated that the brakes were working properly.

Joe Zuniga, a laborer for Brown & Root, Inc. and a witness to the accident, testified that, as the wheel loader started down the incline, he saw the operator brake the vehicle. He stated that the operator then lost control of the vehicle. Ovido Resendez, another Brown & Root, Inc. laborer who witnessed the accident, also testified that, as the vehicle started down the incline, the rear wheels started bouncing off the ground and the operator lost control.

Finally, the appellant offered the testimony of Jack Kriana, a product development engineer for appellant, and Jim Hasten to the effect that the steering and brake systems on the 1969 Model 950 Wheel Loader exceeded industry standards and were "state of the art" at the time of the manufacture of the vehicle. Mr. Hasten further testified that the emergency brake system represented by Plaintiffs' Exhibit 23 was not available for implementation in the 1969 Model 950.

In *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61 (Tex.1983), our Supreme Court reiterated the test set forth in *Turner v. General Motors Corp.,* 584 S.W.2d 844 (Tex.1979) for determining a design defect in a products liability case. The "test requires balancing the utility of the product against the risk involved in its use in order to find that the design is unreasonably dangerous." *Kindred,* 650 S.W.2d at 62. The Court then pointed out how the test in *Turner* had been elaborated on in *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743 (Tex.1980), wherein the Court stated:

> The jury may consider many factors before deciding whether a product's usefulness or desirability are outweighed by its risks. Their finding on defectiveness may be influenced by evidence of a safer design that would have prevented the injury. [Citations omitted.] Because defectiveness of the product in question is determined in relation to safer alternatives, the fact that its risk could be diminished easily or cheaply may greatly influence the outcome of the case.... This feasibility is a relative, not an absolute, concept; the more scientifically and economically feasible the alternative was, the more likely that a jury may find that

the product was defectively designed. A plaintiff may advance the argument that a safer alternative was feasible with evidence that it was in actual use or was available at the time of manufacture. Feasibility may also be shown with evidence of the scientific and economic capacity to develop the safter alternative.[1]

In attempting to meet this test, the appellee offered the aforementioned testimony of Dr. Reed. Appellant argues that Dr. Reed's testimony was no evidence of any design defect. We disagree. Dr. Reed's testimony relates to the feasibility of a practical, safer alternative design of the braking system and is some evidence of a design defect. *Kindred,* 650 S.W.2d at 63.

Likewise, Dr. Reed's and the other appellees' witnesses' testimony also goes to the issue of producing cause. It is inferable from Dr. Reed's testimony that, if his proposed design for an emergency braking system were in use, the accident which injured the appellee would not have occurred. The testimony of the other appellees' witnesses indicates brake failure on the wheel loader as the cause of appellees' injuries. The jury could easily have determined from the evidence that the lack of an emergency braking system was a producing cause of appellee's injuries. *General Motors Corp. v. Hopkins,* 548 S.W.2d 344 (Tex.1977); *Birmingham v. Gulf Oil Corp.,* 516 S.W.2d 914 (Tex.1974); *Darryl v. Ford Motor Co.,* 440 S.W.2d 630 (Tex. 1969); *V. Mueller & Co. v. Corley,* 570 S.W.2d 140 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

■ What we find from the record is sufficient evidence to support both the appellees' theory of recovery and the appellants' defensive theories. It is a fundamental precept of the common law of this State that neither a trial court nor an appellate court may substitute its judgment for that of a jury when there is evidence in which the jury could have believed either side's version of the disputed issue. *Shwiff v. Priest,* 650 S.W.2d 894 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Ballard v. Aetna Casualty & Surety Co.,* 391 S.W.2d 510 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.). Finding sufficient evidence in the record to support the jury's answers to Special Issues One and Two, we overrule appellants' first and second points of error.

■ In its twelfth, twenty-first, twenty-second and twenty-seventh points of error, the appellant complains that certain instructions and special issues submitted to the jury were improper. Appellant's objections point to the instruction given the jury concerning the duty of the manufacturer with respect to the safety of a product and the general damage issue submitted. Our review of the record indicates that counsel for the appellant dictated his objections to the court. However, our review of the record fails to show that the trial judge ever ruled or even commented on the appellant's objections. The record does reveal that appellant submitted requested instructions and special issues covering these same areas which were denied by the trial judge. As was pointed out to this Court in *Hernandez v. Montgomery Ward & Co.,* 652 S.W.2d 923 (Tex.1983), TEX.R.CIV.P. 272 requires that the trial judge affirmatively rule on objections to the charge before there can be any basis for appellate

1. There is much literature upon the question of actual defect. *See* RESTATEMENT (Second) OF TORTS, Sec. 402a (1965); Products Liability: How Good Does a Product Have to Be?, 42 Ind.L.J. 301 (1969); Fisher, Products Liability— The Meaning of Defect, 39 Mo.L.Rev. 339 (1974); Keeton, Manufacturer's Liability: The Meaning of "Defect" and the Manufacture and Design of Products, 20 Syracuse L.Rev. 559 (1969); Keeton, Products Liability and the Meaning of Defect, 5 St. Mary's L.J. 30 (1973); Keeton, Products Liability—Liability Without Fault and the Requirement of the Defect, 41 Tex.L.Rev. 855 (1963); Montgomery and Owen, Reflections on the Theory and Administration of Strict Tort Liability for Defective Products, 27 S.C.L.Rev. 803 (1976); Sells and Purdue, Law of Strict Tort Liability in Texas, 14 Hous.L.Rev. 1 (1976–77); Traynor, The Ways and Means of Defective Products and Strict Liability, 32 Tenn. L.Rev. 363 (1965); Wade, On the Nature of Strict Liability for Products, 44 Miss.L.J. 825 (1973); L. Frumer and M. Friedman, 2 Products Liability, Sec. 16a (1970).

review of the portions of the charge complained of. *Hernandez*, 652 S.W.2d at 925. The tender of a correct issue does not preserve error. *Hernandez*, 652 S.W.2d at 925. Therefore, any error in submitting the instructions and issues were waived. Appellant's twelfth, twenty-first, twenty-second and twenty-seventh points of error are overruled.

██ Through its twenty-third and twenty-fourth points of error, the appellant raises the question of whether or not third-party misuse should have been submitted to the jury.[2] Appellant's contention under these points of error are controlled by General Motors Corp. v. Hopkins, 548 S.W.2d 344 (Tex.1977). In *Hopkins*, the Supreme Court outlined the requirements for establishing misuse as a defense. "[A] use or handling so unusual that the average consumer could not reasonable expect the product to be designed and manufactured to withstand it—a use which the seller, therefore, need not anticipate and provide for." Quoting *Findlay v. Copeland Lumber Co.*, 265 Or. 300, 509 P.2d 28 (Oregon 1973). *See generally* 1 Frumer and Friedman, Products Liability, 15 (1971); Noel, Defective Products: Abnormal Use, Contributory Negligence and Assumption of Risk, 25 Vanderbilt L.Rev. 93 (1972); Anno. Products Liability: Alteration of Product After it Leaves Hands of Manufacturer or Seller as Affecting Liability for Product—Caused Harm, 41 A.L.R.3d 1251 (1972); Anno. Products Liability: Strict Liability in Tort, 13 A.L.R.3d 1057 (1967). As this Court stated in *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), a defendant must establish an unforeseeable misuse which was a proximate cause of the plaintiff's injuries.

██ What appellant is asserting here is that the misuse of the product by a third party; Brown & Root, Inc., who is not even a party to the litigation, is sufficient to raise the issue of misuse as a defense against the non-misusing plaintiff. We do not agree with this theory. Appellant's defective design was established by the evidence, while no evidence of misuse by the appellee exists in the record. Therefore, appellant was not entitled to the submission of any charge on misuse by Brown & Root, Inc. *See General Motors v. Hopkins*, 548 S.W.2d at 351. Obviously, under the recent holding by the Supreme Court in *Duncan*, a comparative causation issue is now appropriate where third-party negligence is raised by the evidence. However, such was not the state of the common law at the time this case was tried. Appellant's twenty-third and twenty-fourth points of error are overruled.

In its twenty-fifth and twenty-sixth points of error, the appellant charges that there was no evidence or insufficient evidence to support the jury's findings as to the amount of damages. In support of his claim for future medical expenses, appellee elicited testimony from two of his treating physicians, Dr. Ponder and Dr. Cowart. The basis of these physicians' testimony was that appellee had suffered severe permanent injuries which would result in a broad spectrum of directly related medical problems for the remainder of his life. Also, a general estimate of future medical expenses was set at $26,000.00 per year by Dr. Huddle, appellees' economics expert.

██ While acknowledging that Dr. Huddle's estimate was apparently based on some one-time medical expenses, we are still unable to find the jury's award unsupported by the evidence. It is apparent from both physicians' testimony that there is a high probability that severe and expensive medical complications may afflict the appellee as a result of his injuries. Based on the very nature of appellee's injuries, and their devastating physical and psychological effect on the appellee, coupled with the fact that an award of future medical expenses is primarily for the jury to decide, we refuse to disturb the jury's award. *Ar-*

2. We are, of course, mindful of the recent Texas Supreme Court opinion in *Duncan v. Cessna Corp.*, 665 S.W.2d 414, 27 Tex.Sup.Ct.J. 213 (1984) abolishing misuse as a defense in products liability cases. Had this case been tried after the effective date of *Cessna* (July 13, 1983), an entirely different form of charge would have been required.

*mellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d 297 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Texas Steel Co. v. Recer,* 508 S.W.2d 889 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). We find sufficient evidence to support the jury's answer to Special Issue No. 9.

■ Murphy Greer, the custodian of Brown & Root, Inc.'s pay records, testified concerning the appellee's wages at the time of his injuries and as to what pay increases he would have received up until the time of trial. Next, Dr. Huddle testified as to the amount of economic loss appellee suffered as a result of his injuries and as to his future medical expenses. The jury's award of general damages in Special Issue No. 8 is supported by this evidence. Taking into consideration the aforementioned testimony and the standards we set forth in *McMillin v. L.D.L.R.,* 645 S.W.2d 836 (Tex. App.—Corpus Christi 1982, no writ) for awards of physical pain and mental anguish, we find sufficient evidence to support the jury's award. Appellant's twenty-fifth and twenty-sixth points of error are overruled.

■ In its twenty-eighth point of error, the appellant complains of the failure of the trial court to grant a remittitur. In considering the excessiveness of compensation under remittitur, we are required to exercise sound judicial judgment and discretion in the ascertainment of what constitutes reasonable compensation for the injuries suffered. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959). There is no certain standard by which personal injury damages can be measured, and each case must stand on its own facts and circumstances, and a comparison with other cases on amounts of verdicts are of little or no help. *Broesche v. Bullock,* 427 S.W.2d 89 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). This rule is based upon the sound policy consideration that the same loss will occasion different damages to different individuals, depending upon mental attitude and the effect of injuries on earning capacity. *Claunch v. Ben-*

*nett,* 395 S.W.2d 719 (Tex.Civ.App.—Amarillo 1965, no writ). In light of our holding that both the award of general damages and future medical expenses are supported by the evidence and are therefore not excessive, we find no error in the trial court's refusal to grant a remittitur and likewise we also decline to do so. Appellant's twenty-eighth point of error is overruled.

Appellant's third, fourth, fifth, sixth and seventh points of error allege error by the trial court in the discovery and introduction into evidence of documents pertaining to design changes instituted by appellant after the date of the accident. Specifically, appellant is complaining of the evidence concerning the braking system implemented in the Model 950 Wheel Loader in 1972.

The case of *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743 (Tex.1980) is sufficiently analogous to be controlling here. In the *Boatland* case, the plaintiff sought to prove defective design by proof of the existence and feasibility of a design which would have prevented plaintiff's injuries. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d at 746.

■ The testimony of appellant's own expert, Jim Hasten, established that an emergency braking system was in use in other Caterpillar Wheel Loaders in 1969. He also admitted such a system could have been designed for use in the Model 950 in 1969. The facts of this case go beyond the circumstances of *Boatland* in that the appellee then introduced evidence that the emergency system in use on other Caterpillar Wheel Loaders in 1969 was subsequently installed in the Model 950 in 1972. As the Court stated in *Boatland:*

> [A] plaintiff may advance the argument that a safer alternative was feasible with evidence that it was in actual use or was available at the time of manufacture.... Thus evidence of the actual use of, or capacity to use safer alternatives is relevant insofar as it depicts the available scientific knowledge and the practicalities of applying that knowledge to a product's design.

The evidence in question was both discoverable and admissible for the purposes for which it was tendered. Appellant's points of error three through seven are overruled.[3]

In its eighth point of error, the appellant complains of the action of the trial court in allowing the appellee to proceed to trial on a general allegation of a product defect. While our review of the record indicates appellee's trial pleadings were far from general, the record also indicates that appellee was under a previous order to amend his pleadings to specify his claims. The proper test for the specificity of pleadings is that "they give the opposing party fair notice of the proof which will be introduced against him at the trial." *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Osteen v. Crumpton*, 519 S.W.2d 263 (Tex.Civ.App.—Dallas 1975, writ refused). TEX.R.CIV.P. 45.

Our review of the extensive record and particularly the discovery conducted indicates that the trial court was well within his discretion in allowing the case to go to trial on the appellee's sixth amended petition. As was stated in *Finch v. McVea*, 543 S.W.2d 449 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), "[T]he trial court is granted a large measure of discretion in passing on exceptions to the pleadings and in the absence of a showing of abuse of discretion or injury resulting from the trial court's ruling, the ruling will not be disturbed." Appellant's eighth point of error is overruled.

In its ninth point of error, the appellant excepts to the action of the trial court in denying its motion to strike the trial setting and for a continuance. Our review of the record indicates that this case was continued on five separate occasions; three at the request of the appellant. The case was ultimately set for trial some sixty (60) days after appellant stated it would be ready for trial. "The matter of granting a continuance rests within the sound discretion of the trial judge." *Hernandez v. Heldenfels*, 374 S.W.2d 196 (Tex.1963). An order denying a continuance will not be disturbed on appeal, absent a clear showing of abuse of discretion by the trial court. *Celanese Coating Co., Devoe Paint Div. v. Sollz*, 541 S.W.2d 243 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). The trial judge was well within his discretion to deny the appellant's motion. Appellant's ninth point of error is overruled.

In its tenth point of error, the appellant claims error in the trial court's convening of a pretrial hearing on August 13, 1982 and August 27, 1982, and the court's subsequent discovery orders. Initially, we note that the appellant raises no objection to the evidence sought to be discovered at these hearings nor did it file any motion for protection under TEX.R.CIV.P. 186b (Vernon 1982–1983).

Once again, we note that the appellant has chosen to attack an area in which the trial court is vested with broad discretion. *Hopkins v. Hopkins*, 540 S.W.2d 783 (Tex. Civ.App.—Corpus Christi 1976, no writ); *Fisher v. Continental Illinois National Bank & Trust Co. of Chicago*, 424 S.W.2d 664 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). We find no abuse of discretion in the trial court's order of discovery. We also find that appellant had adequate notice of the August 13, 1982 hearing which is demonstrated by the pres-

---

**3.** While recognizing that it did not become effective until September 1, 1983, we note with interest TEX.R.EVID. 407(a). "When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent remedial measures when offered for other purposes, such as proving ownership, control or feasibility of precau-tionary measures, if controverted, or impeached. *Nothing in this rule shall preclude admissibility in products liability cases based on strict liability.*" In his comment on this rule in 1A R. Ray, Tex.Law of Evid. Civil and Criminal, Sec. 1151, Texas Practice 2d Ed. (Supp.1984), the author points out that "The first two sentences of Rule 407(a) codify the Texas case law. The last sentence creates new law where there were no Texas cases by admitting evidence of subsequent remedial measures in products liability cases based on strict liability."

ence of an attorney representing appellant at the hearing. *Galindo v. State*, 535 S.W.2d 923 (Tex.Civ.App.—Corpus Christi 1976, no writ). Appellant's tenth point of error is overruled.

Appellant's thirteenth point of error complains of the trial court's refusal to allow appellant to cross-examine appellee's expert witness, Dr. Reed, concerning the testimony of other witnesses and certain safety standards. Noting first that appellant has failed to indicate where in the record these alleged evidentiary infirmities occurred (TEX.R.CIV.P. 418(e)), we find the evidence allegedly excluded by the trial court was merely cumulative of other testimony already in the record. The exclusion of cumulative evidence is not harmful error. *Reina v. General Accident Fire & Life Assurance Corp., Ltd.*, 611 S.W.2d 415 (Tex.1981). While we acknowledge that the appellant should have been given the opportunity to cross-examine Dr. Reed concerning the testimony of Jesse Bonnett which he used in forming his expert opinion as to 1969 safety standards, we find the error harmless. *Ramirez v. Wood*, 577 S.W.2d 278 (Tex.Civ.App.—Corpus Christi 1979, no writ); TEX.R.CIV.P. 434. Our review of Dr. Reed's cross-examination by appellant's counsel reveals that he specifically testified as to those portions of Mr. Bonnett's testimony on which he relied. Appellant's thirteenth point of error is overruled.

Appellant's fourteenth and fifteenth points of error concern the appellee's motion in limine which was granted by the trial court and prevented appellant from offering certain cross-examination testimony of appellee's witness Jesse Bonnett. A trial court's actions in granting or denying a motion in limine presents nothing for appellate review. *Hartford Accident Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963); *Union Carbide Corp. v. Burton*, 618 S.W.2d 410 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

The thrust of appellant's argument appears to be that the trial court erred in refusing to allow appellant's counsel to comment on the reasons for the witness' absence at the trial. The appropriate point in the trial proceedings for such a comment would be the closing argument. We note that appellant has failed to provide this Court with a copy of its closing arguments, and we are therefore unable to determine if appellant was, in fact, prevented from making the otherwise appropriate comment on Mr. Bonnett's failure to testify. Therefore, nothing is presented for our review. *See Meyer v. Kupatt*, 549 S.W.2d 263 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r. e.); *Swinney v. Winters*, 532 S.W.2d 396 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). Appellant's fourteenth and fifteenth points of error are overruled.

Through its sixteenth point of error, appellant excepts to the action of the trial court in admitting into evidence certain repair records of the subject wheel loader. (Plaintiff's Exhibit 11, 12) Plaintiff's Exhibit 11 was originally tendered into evidence during the appellee's case-in-chief and was offered as an exception to the hearsay rule under TEX.REV.CIV. STAT.ANN. art. 3737e (repealed September 1, 1983). Appellant timely objected to this tender and was overruled. Subsequently, appellee again tendered Exhibit 11 and 12 into evidence, again under the auspices of art. 3737e. Again, appellant objected and was overruled. We find the proper predicate was laid for the admission of these records. We also note that their tender into evidence was a general tender. Therefore, the subsequent use of this evidence for any purpose was permissible. *Yarbrough v. Cooper*, 559 S.W.2d 917 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Appellant's sixteenth point of error is overruled.

In its seventeenth and eighteenth points of error, the appellant alleges error by the trial court in failing to grant a new trial or mistrial due to alleged improper argument of counsel and comments by the appellee. The standard for reversal of a case for improper jury argument was set forth in *Standard Fire Insurance Co. v. Reece*, 584 S.W.2d 835 (Tex.1979).

In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge.... There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error or proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of·the whole case, which begins with the voir dire and ends with the closing arguments.

Our review of the record indicates that appellant totally failed to preserve any such alleged error.

■■■■■ The alleged statement by the appellee which serves as the basis for appellant's complaint is an unsolicited comment by the appellee that all his problems are Caterpillar's fault. At the time of the statement, no objection was made by the appellant, no request for instruction was made to the jury, nor was any motion for mistrial urged. Four days later, the appellant moved for a mistrial on this statement. It is fundamental that, absent a timely objection, appellate complaint as to improper evidence is waived. *Cherry v. State*, 546 S.W.2d 922 (Tex.Civ.App.—Dallas 1977, writ ref'd). Appellant's seventeenth and eighteenth points of error are overruled.

■■■■■ In its nineteenth and twentieth points of error, appellant complains of the trial court's failure to conduct a hearing on jury misconduct and its failure to grant a new trial based on alleged jury misconduct. The alleged jury misconduct consisted of the refusal of the jury foreman to send the trial judge a note from the other jurors requesting certain deposition testimony be read back to the jury. The affidavit of one of the jurors indicated that the jury foreman refused to send the note to the judge because she had previously served on a jury before the same judge and knew he could not permit the deposition testimony to be read back to the jury. Initially, we note that the occurrence of jury misconduct is a question of fact to be determined by the trial court which has broad discretion in making its determination. *Fields v. Texas Employers' Insurance Association*, 565 S.W.2d 327 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). TEX.R.CIV.P. 287 requires the court to read the testimony of the witness back to the jury only where the jury disagrees as to the statements of a witness. The affidavit states only that some of the jurors could not remember the testimony of the witness, not that there was any disagreement as to what the witness had stated. *See Hill v. Robinson*, 592 S.W.2d 376 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). While we acknowledge that it was highly improper for the foreman to have expressed her opinion as to the judge's ruling on a jury request, we find appellant has failed to demonstrate any reversible error resulting from her actions. Likewise, we find that, since there was no evidence of misconduct presented by the appellant's motion for new trial, the trial court was under no duty under TEX.R. CIV.P. 327 to conduct a hearing on appellant's motion. Appellant's nineteenth and twentieth points of error are overruled.

Appellant's twenty-ninth, thirtieth and thirty-first points of error all concern the question of whether or not appellant was entitled to any reduction or credit in the judgment for amounts paid the appellee by other settling defendants. Prior to the trial currently at issue, appellee settled his claim against four other named defendants.. It is appellant's position that it is therefore entitled to a four-fifth (⅘) pro-rata reduction in the amount of the judgment.

■■■■ Appellant's primary argument under these three points of error is that, under the provisions of TEX.REV.CIV.

STAT.ANN. art. 2212 (Vernon 1971) and the holdings of our Supreme Court in *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (Tex.1977) and *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1965), it is entitled to a pro-rata reduction in the judgment. The aforementioned statute and cases all stand for the proposition that, in strict liability cases where one or more defendants have settled, the remaining defendants are entitled to a pro-rata reduction of the amount of damages found by the factfinder at trial.[4] In *Deal v. Madison*, 576 S.W.2d 409 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.), the Court set forth the standards we feel are applicable to this case. In *Deal* the Court pointed out that, in order to obtain a proportionate reduction of damages, the defendant had the burden of establishing that the released parties were actual tort feasors, that is, that the released parties had proximately caused the injury. The Court went on to point out that where the released parties were not shown to be tort feasors; where they were not made parties to the suit by the non-settling defendant; where no contribution was sought from them; and, where no finding was made that they were guilty of negligence proximately causing the injury, the non-settling defendant was not entitled to a pro-rata reduction of the judgment. *Petco v. Plummer*, 392 S.W.2d 163 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.); *see also Cypress Creek Utility Service Co., Inc. v. Muller*, 640 S.W.2d 860 (Tex.1982). Our review of the record indicates that appellant took none of the steps necessary to entitle it to a pro-rata reduction of the judgment. The only effort the appellant made to perfect the right to a pro-rata reduction was a request for trial amendment asking for pro-rata reduction of any judgment. This action was not sufficient.

The second question raised by appellant's three points of error concerns whether or not the appellant was entitled to a reduction in the judgment in the amount of the settlement as opposed to a pro-rata reduction. Until our Supreme Court's recent decision in *Duncan v. Cessna*, it would

appear that the rule of "one satisfaction" applied in cases such as this where there was no TEX.REV.CIV.STAT.ANN. art. 2212a (Vernon Supp.1984) question concerning a division of the judgment among negligent tort feasors. *T.L. James & Co., Inc. v. Statham*, 558 S.W.2d 865 (Tex. 1977); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837 (Tex.App.—Waco 1982, writ dism'd); *Providence Hospital v. Truly*, 611 S.W.2d 127 (Tex.Civ.App.—Waco 1980, writ dism'd). Appellee argues that appellant is not entitled to any reduction in the judgment due to its failure to have requested such an action by the trial court. We note that appellant's requested trial amendment also seeks credit for the amount paid appellee by the settling defendants. We hold it was error for the trial court to have refused appellant's trial amendment as to reduction of the judgment and that the judgment should be reduced by the amount of the settlement previously received by the appellees. We calculate the amount the judgment should be reduced to be $560,200.00. ($265,000 cash received plus $600 per month times 41 years life expectancy of appellee.) Appellant's twenty-ninth and thirty-first points of error are sustained. Appellant's thirtieth point of error is overruled.

 In its final point of error, appellant argues that the trial court erred in not granting its new trial and that this Court should reverse the case because of passion, prejudice and sympathy for the appellee on the part of the jury and because of the inherently unfair nature in which the trial was conducted. As is apparent by this opinion, we have scrupulously reviewed the thousands of pages of testimony, evidence and pleadings filed in this case. We find nothing in the record to indicate that the jury's responses to the special issues were based on anything other than the evidence presented by the parties. Likewise, we find no single circumstance or incident wherein the trial judge allowed the trial to be conducted in an improper manner or

---

**4.** We once again acknowledge that this type of division of recovery has been significantly altered by the Supreme Court's holding in *Duncan v. Cessna*.

where any action by the trial judge indicates prejudice on his part. A common maxim of trial jurisprudence is that the parties are entitled to a fair trial, not a perfect trial. We believe the parties herein received a fair trial. Appellant's thirty-second, thirty-third, and thirty-fourth points of error are overruled.

The judgment of the trial court is modified to reduce the judgment by $560,200.00, and, as modified, is affirmed.

BISSETT, J., not participating.

Before KENNEDY, BISSETT and GONZALEZ, JJ.

## OPINION ON APPELLEE SAMMY BOYETT'S MOTION FOR REHEARING

KENNEDY, Justice.

In our original opinion in this cause, we sustained appellant's twenty-ninth point of error and ordered the judgment in the cause reduced by the amount of $560,-200.00. This amount represented a $265,-000.00 cash settlement, plus $600.00 per month times the forty-one year life expectancy of the appellee. In his motion for rehearing, appellee has pointed out to us for the first time that the $600.00 per month award was a settlement with the worker's compensation carrier. While appellee did not apprise us of this development in his brief, we note from the transcript that the settlement was in fact with the compensation carrier.

Our Supreme Court has made it quite clear that a worker's compensation carrier is not a settling party for the purposes of either a credit or a proportionate reduction in favor of the nonsettling party. *Teakell v. Perma Stone Company,* 658 S.W.2d 563 (Tex.1983); *Varella v. American Petrofina Co. of Texas,* 658 S.W.2d 561 (Tex.1983). We, therefore, withdraw that portion of our opinion which authorized the reduction of the award by the amount paid as settlement by the compensation carrier and order that the plaintiff's reward be reduced only by the $265,000.00 cash award received by the plaintiff by the settling defendants. The remainder of the points raised by appellee Sammy Boyett's motion for rehearing are overruled.

BISSETT, J., not participating.