**Clyde WILLIAMS, Plaintiff-Appellant,**

**Employers National Insurance Company, Intervenor,**

v.

**K & B EQUIPMENT COMPANY, INC., Defendant-Appellee.**

No. 83–3098.

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1984.

Christenberry & Associates, Michael H. Piper, III, New Orleans, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Madeleine Fischer, New Orleans, La., for intervenor.

Chaffe, McCall, Phillips, Toler & Sarpy, Kenneth W. Jacques, Kenneth J. Servay, New Orleans, La., for defendant-appellee.

Before GEE, TATE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Clyde Williams appeals the adequacy of the district court's awards for past lost wages, future lost earning capacity and past and future pain and suffering caused by a 1978 longshoreman's accident. We affirm the future lost earning capacity and pain and suffering awards as not clearly erroneous, but vacate and remand the award for past lost wages to correct an apparent error in calculation.

## I

On June 16, 1978, in his second day as a longshoreman, Williams, then 24 years old, was struck on his right ankle by a pallet board that fell from a K & B crane. In a bench trial the district court found K & B liable for the injury and with the consent of the parties referred the case to a magistrate to determine damages.

Williams' medical history is not in dispute. He has undergone three operations on his right ankle, each under general anesthesia. He has also been subject to several moderately painful exploratory surgical procedures. Williams has suffered intermittent pain and swelling in his right ankle and will continue to experience these symptoms absent a fusion of the ankle. A successful fusion may end the pain but will leave a limp. Regardless, he will have a permanent 35% impairment of his right foot, an impairment of both his social and work life.

Before the injury Williams played basketball and football as his principal outside interests and he had been practicing with a semi-professional football team. It is uncontested that he will no longer be able to play these sports.

Williams had worked sporadically as a longshoreman over a period of three months in 1972. He later joined the United States Army and was honorably discharged in 1975. During 1975–1977 Williams never reported earnings of more than $1,200 a year. He testified that he earned more than this working on a cash basis as a security guard but was unable to document these earnings and the magistrate did not credit this testimony. After the injury Williams worked a few odd jobs but was vague concerning his earnings and the magistrate estimated these earnings at $1000. Since October 1981 Williams has worked as a retail clerk in a grocery store earning $4.50 an hour working forty-hour work weeks.

A report by Dr. Fosberg, a vocational psychologist, stated that given Williams'

high school education and the results of an intellectual evaluation and a manual dexterity test, his best vocational track would have been as a longshoreman, which paid $11.60 per hour at the time of the report, or as a pipefitter, bricklayer or boilermaker where he would also earn over $10.00 per hour. The report concluded that given his injury, Williams' career opportunities would be limited to store clerk, parking lot attendant and security guard. Dr. Fosberg stated that these occupations currently paid the minimum wage plus accruals based on seniority. Williams' orthopedist, Dr. Stokes, testified that without the fusion Williams was capable of driving a truck or operating a forklift or a crane. Dr. Goodman, an economist, testified that assuming forty-hour work weeks the present value of the difference in salary between Williams' earnings as a longshoreman and as a retail clerk is $199,571.89.

The magistrate determined that Williams was entitled to recover $39,078.76 consisting of: past lost wages $5,916.00; past and future pain and suffering $10,000.00; future lost earning capacity $10,000.00; and medical expenses $13,162.76. The district court adopted the magistrate's findings and recommendations.

## II

■ The magistrate's findings, adopted by the district court, are subject to the clearly erroneous standard. As such we can only reverse if, after a review of the entire evidence, we are "left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Ferrero v. United States*, 603 F.2d 510, 512 (5th Cir.1979).

■ Williams argues that the magistrate erred in determining that his past lost wages were $5,916.00. Testimony before the magistrate demonstrated that long-

shoreman's work is available based on a priority system in which assignments are first awarded to those with A cards, followed by B cardholders, C cardholders and beginners (rabbits). Williams was a rabbit when he was injured.[1] Williams' brother, James, who was also a longshoreman, testified that it took him five years to receive an A card. Evidently based on this guidance, the magistrate estimated that Williams would have worked the following hours as a longshoreman if he had not been injured:

| Period | Hours | Hourly Rate | Earnings |
|---|---|---|---|
| June 16, 1978 October 1, 1978 | 70 | 8.80 | $ 616.00 |
| October 1, 1978 October 1, 1979 | 250 | 9.60 | $2,400.00 |
| October 1, 1979 October 1, 1980 | 375 | 10.40 | $3,900.00 |
| October 1, 1981 October 1, 1982 | 500 | 11.60 | $5,800.00 |

The magistrate found that Williams should not be awarded for past lost wages for the period after October 1, 1981 since he was then employed and earning $8,800.00 per year. Adding the first three figures for earnings (listed as June 16, 1978—Oct. 1, 1980) and deducting $1,000.00 for post-injury income earned before October, 1981, the magistrate awarded $5,916.00 for past lost wages.

As is apparent from the table, the period October 1980 through October 1981 was omitted. On appeal, K & B argues that this was a clerical error and the period labeled Oct. 1981—Oct. 1982 was in fact for Oct. 1980—Oct. 1981. In support of this contention K & B notes that the hourly rate applied, $11.60, was in effect during Oct. 1980—Oct. 1981 and that the rate changed in Oct. 1981. Even if K & B's interpretation is correct this would still leave unanswered what hours the magistrate estimated that Williams would have worked after October 1981 and whether this would have been greater than $8,800.00 per year. It is

1. The magistrate found that to acquire a card a longshoreman must work the following minimum numbers of hours per year:

| Type of Card | Minimum/Year |
|---|---|
| A | 700 |
| B | 500 |
| C | 130 |

not at all apparent that the magistrate otherwise estimated Williams expected employment for the Oct. 1981—Oct. 1982 period.

K & B argues that in any event the magistrate's "skipped year" is not before us because Williams failed to specifically pinpoint this error in his objection to the magistrate's findings. Williams, however, objected to the magistrate's finding that Williams would only earn $6,916 between June 16, 1978 and October 1, 1981. In that objection Williams incorporated an earlier objection which stated that his 1981 earnings should be estimated at $23,200, or $11.60 per hour for a forty-hour work week. These objections were sufficiently specific to put the district court on notice of the urged error. 28 U.S.C. § 636(b)(1), see Nettles v. Wainwright, 677 F.2d 404, 410 and n. 8 (5th Cir.1982) (Unit B—en banc). Accordingly, we must remand for a reconsideration of Williams' past lost earnings.

Williams next attacks the magistrate's finding that his lost future earning capacity is $10,000.00. The magistrate rejected Dr. Goodman's estimate of $199,-571.89 for lost future earning capacity because she failed to find that Williams would work 40 hours per week as a longshoreman or that Williams would be relegated to occupations paying the minimum wage.

Concerning Williams' remaining occupations the magistrate rejected Dr. Fosberg's statement that Williams would be limited to minimum wage occupations because he was currently earning more than the minimum wage and because she credited Dr. Stokes' testimony that Williams could work as a bus driver (actually Dr. Stokes testified that Williams could work as a truck driver), forklift or crane operator. Williams is currently working as a retail clerk, earning $4.50 an hour. While we do not necessarily agree with the magistrate's determination of Williams' damages for lost future earning capacity, we cannot find them clearly erroneous.

Similarly the magistrate's findings of $10,000 for pain and suffering is not clearly erroneous. While it is apparent that Williams has and will continue to suffer because of the injury, and the award is hardly generous, we do not find the award so low as to require reversal.

AFFIRMED in part, VACATED and REMANDED in part.