**Jules WAKEFIELD, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 84–2313.**

United States Court of Appeals, Fifth Circuit.

July 5, 1985.

Henry K. Oncken, U.S. Atty., Pete Sandoval, James R. Gough, C.J. (Neil) Calnan, Asst. U.S. Attys., Houston, Tex., for defendant-appellant.

Browning & Associates, Dennis M. Beck, Christopher Bradshaw-Hull, Houston, Tex., for plaintiff-appellee.

Before RANDALL, JOHNSON, and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

The United States appeals from the damages award of the district court in this Federal Tort Claims Act suit brought by Jules Wakefield for injuries he suffered due to treatment he received at the Veterans Administration Medical Center in Houston, Texas. The district court found that the physicians who treated Wakefield were negligent in failing to monitor the level of amikacin, an antibiotic, in Wakefield's blood. Amikacin has ototoxic effects, and Wakefield suffered total loss of hearing as a result of toxic levels of the drug. The district court awarded Wakefield $735,000 for past mental anguish, future mental anguish, and physical impairment. On appeal, the Government concedes its liability, but it asserts first that the district court's factual findings regarding Wakefield's damages are clearly erroneous, and second, that the $735,000 award is excessive. Finding no error, the judgment of the district court is affirmed.

I. BACKGROUND

This case arises from the treatment provided Jules Wakefield at the Veterans Administration Medical Center (VAMC) in Houston, Texas, in April and May of 1981. Wakefield, an armed service veteran, suffered from chronic renal failure. In April 1981 Wakefield was admitted to the VAMC with a severe abdominal infection due to dialysis complications. Wakefield's physicians decided to treat the infection with the antibiotic amikacin. Amikacin has known ototoxic side effects, particularly for patients with impaired renal function.[1]

The district court found that the VAMC physicians failed to exercise due care in administering the antibiotic amikacin for treatment of Wakefield's infection because they allowed the drug to reach toxic levels which caused Wakefield's hearing loss. Tests indicate that Wakefield suffers from permanent and irreversible profound bilateral sensory-neural hearing loss. In addi-

---

1. A simple definition of ototoxic is a toxicity involving the inner portion of the ear. Record Vol. 3 at 91.

tion, Wakefield suffers from tinnitus—a constant ringing or buzzing sound in his ears. Testimony at trial also indicated that Wakefield suffered mental and pyschological changes as a result of his hearing loss.

The district court awarded Wakefield the following damages: (1) $135,000 for physical impairment, (2) $150,000 for past mental anguish, and (3) $450,000 for future mental anguish. The Government moved to amend the judgment asserting that the award was excessive. The district court denied that motion, and the Government filed a notice of appeal contesting only the amount awarded by the trial court.

The Government makes two arguments on appeal. First, the Government asserts that the factual findings of the district court regarding Wakefield's damages are clearly erroneous. Second, the Government asserts that the award is excessive and that this Court should reduce the award to a proper amount. This Court concludes that the district court's findings are not clearly erroneous and that the award, while plentiful, is not excessive.

## II. THE DISTRICT COURT'S FINDINGS

In *Ferrero v. United States*, this Court stated the standard for review of factual determinations, including damages, in Federal Tort Claims Act cases:

> In FTCA cases the clearly erroneous standard governs our review of factual determinations, including damages. *Williams v. United States*, 405 F.2d 234, 239 (5th Cir.1968); Fed.R.Civ.P. 52(a).... We judge a trial court's finding to be clearly erroneous when, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 29 L.Ed. 746 (1948).

603 F.2d 510, 512 (5th Cir.1979). *See Williams v. K & B Equipment Co.*, 724 F.2d 508, 510 (5th Cir.1984). After our review of the entire record in this case, this Court concludes that the district court's findings are not clearly erroneous.

The district court found that (1) the plaintiff's deafness is permanent and irreversible, (2) the plaintiff did not have any hearing impairment prior to entering the VAMC in April 1981, (3) plaintiff's hearing loss has affected his mental condition and caused physical impairment and pain and suffering, and (4) since his hearing loss, plaintiff has suffered from tinnitus. Record Vol. 1 at 35–36. In addition, the district court concluded that the plaintiff's life expectancy was ten years from the date of judgment. *Id.*

■ On appeal, the Government argues that the record does not contain sufficient evidence of Wakefield's condition before and after the injury so as to support a finding on damages. *See Overton v. United States*, 619 F.2d 1299, 1303 (8th Cir. 1980). This Court disagrees. The evidence clearly establishes that Wakefield's hearing was not impaired before his treatment at the VAMC, but that he is presently totally and permanently deaf. The record also abundantly supports the district court's conclusion that Wakefield suffers from permanent tinnitus, a condition not present prior to his treatment with amikacin. The Government most strongly urges that the record is insufficient to support the finding that Wakefield's hearing loss has affected his mental condition and caused physical impairment, pain and suffering. However, the district court had before it the testimony of Wakefield, his wife, and a neighbor. This Court has carefully reviewed their testimony, and while it might not be said to be overwhelming, the evidence is fully sufficient to support the district court's findings. As such, the findings are not clearly erroneous.

The record also establishes that Wakefield is a different person mentally and emotionally than he was before his loss of hearing. Record Vol. 3 at 35, 37, 47. He is withdrawn, frightened, and avoids social activities. Record Vol. 3 at 36, 47; Plaintiff's Exhibit 1 at 5. Wakefield is "hard on his family." Significant indeed is the testimony that Wakefield appears to have lost his enjoyment of life. Record Vol. 3 at 35,

37, 48. Importantly, Wakefield is completely and irreversibly deaf. Record Vol. 1 at 44. His hearing has been replaced by tinnitus, which is a constant ringing or buzzing noise in his ears. Wakefield's tinnitus is permanent and untreatable. It is worse when people attempt to talk to him, it gives him constant headaches, and it affects his sleep. Plaintiff's Exhibit 1 at 5–8. Consequently, the district court's finding that Wakefield's hearing loss has affected his mental condition, caused physical impairment, and pain and suffering is not clearly erroneous.

■ The Government attempts to point out contradictory testimony in the record that might tend to establish that Wakefield's condition is not as severe as the plaintiff's testimony would indicate. The presence of contradictory testimony in and of itself, however, does not render the district court's findings clearly erroneous. It is within the province of the district court, sitting without a jury, to make such credibility choices and weigh the evidence. *Macpherson v. Texas Department of Water Resources*, 734 F.2d 1103 (5th Cir.1984). This Court concludes that the record supports the district court's findings, and as

such, those findings are not clearly erroneous.[2]

## III. EXCESSIVENESS OF THE AWARD

■ As noted, the district court awarded Wakefield $135,000 for physical impairment, $150,000 for past mental anguish, and $450,000 for future mental anguish. Given the district court's finding that Wakefield's life expectancy was ten years from the date of judgment, this award is plentiful indeed. While we note that the award is in the upper range that this Court might uphold in similar cases, we hold that the award was not excessive for the following reasons.

■ The components and measure of damages in FTCA cases are taken from the law of the state where the tort occurred. *Ferrero*, 603 F.2d at 512; *Harden v. United States*, 688 F.2d 1025, 1028–29 (5th Cir. 1982). This case, therefore, is governed by Texas law. Under Texas law, damages in a case of this nature are limited to $735,000 by statute. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i. It is somewhat unclear whether the rules governing the question of remittitur also should be those of the state involved or the federal law of remittitur. We need not decide this question at this time, how-

2. The Government asserts that this Court should give less deference to factual findings made by the district court which are based on documentary evidence. The basis of the Government's argument is that this Court sits in the same position as the district court when weighing the value of such evidence because the district court did not see and hear the witness testify in order to judge that witness' demeanor and credibility. *See Marcum v. United States*, 621 F.2d 142, 144–45 (5th Cir.1980). This argument is foreclosed by the recent Supreme Court decision in *Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), wherein the Supreme Court stated that the clearly erroneous standard applies

> [e]ven when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts. To be sure, various Courts of Appeals have on occasion asserted the theory that an appellate court may exercise *de novo* review over findings not based on credibility determinations. This theory has an impressive genealogy, ... but it is impossible to trace the theory's lin-

> eage back to the text of Rule 52.... That the Rule goes on to emphasize the special deference to be paid credibility determinations does not alter its clear command: Rule 52 "does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous."

*Id.* at 1512 (citations omitted). The Government also asserts that Wakefield's own testimony by written questions should be discounted because the Government allegedly lacked the ability to conduct effective cross examination of him. Wakefield's testimony was taken in this manner because of his inability to hear. The Government, the court, and plaintiff's counsel all agreed to this method. The Government was allowed to submit questions for cross examination. At trial, the Government attempted to present additional questions to which plaintiff's counsel objected on the basis that they had been asked and answered. The court sustained the objection. On this record this Court sees no reason to discount Wakefield's testimony.

ever, because the law of Texas regarding the excessiveness of awards is substantially the same as the law controlling in this Circuit. *Compare Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036, 1046 (5th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1749, 1750, 84 L.Ed.2d 814 (1985), *with International Harvester Co. v. Zavala,* 623 S.W.2d 699, 708 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

■ Generally, "[w]e give a trial court great latitude in awarding damages," *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 632 (5th Cir.1983). Awards are reviewable, however, both for excessiveness and inadequacy. *Id.; Hansen,* 734 F.2d at 1046–47. In *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778 (5th Cir.1983), this Court stated this Circuit's test for the determination of whether an award is excessive:

> The [trier of fact's] award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption, or other improper motive," or as "clearly exceed[ing] that amount that *any* reasonable man could feel the claimant is entitled to."

*Id.* at 784 (footnotes omitted, emphasis in original); *Hansen,* 734 F.2d at 1046.

How this Court goes about determining what is or is not an excessive award is not an exact science. Much of that determination is admittedly subjective. *See Caldarera,* 705 F.2d at 784; *Parks v. Dowell Division of Dow Chemical Corp.,* 712 F.2d 154, 160 (5th Cir.1983). Nevertheless, unless we are willing to accept any verdict in whatever amount, appellate courts must review awards. The "sky is simply not the limit" for awards. *Caldarera,* 705 F.2d at 784; *Haley v. Pan American World Airways,* 746 F.2d 311, 318 (5th Cir.1984).

The Government contends that this Court should compare awards in similar cases to determine whether the present award is excessive. Wakefield, on the other hand, contends that such an approach is of little or no help to an appellate court since the facts of each case vary. Indeed, this Court has both stated the value of looking at other awards, *see, e.g., Haley,* 746 F.2d at 318 (prior awards may be of some aid in determining excessiveness of a damage award when the controverted award is shown to be greatly disproportionate to past awards for similar injuries); *Ferrero,* 603 F.2d at 514–515 n. 1 (prior awards useful in determining the general flavor as to trends of awards; the court in that case found two cases to be particularly helpful), as well as expressed the sentiment that comparison with other awards is of limited value because each case depends on its own facts, *see, e.g., Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 364 (5th Cir. 1980) (comparison of verdicts rendered in different cases is not a satisfactory method for determining excessiveness *vel non* in a particular case because each case must be determined on its own facts); *Wiley v. Stensaker Schiffahrtsges,* 557 F.2d 1168, 1172 (5th Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Texas courts are also divided on this issue. *Compare Bristol-Myers Co. v. Gonzales,* 548 S.W.2d 416, 434 (Tex.Civ.App.—Corpus Christi 1976), *rev'd on other grounds,* 561 S.W.2d 801 (Tex.1978) (a comparison with other cases on amounts of verdicts is of little or no help because of the different characteristics of each individual plaintiff) *with Moses v. Adams,* 428 S.W.2d 131, 134 (Tex.Civ.App.—Beaumont 1968, writ ref'd n.r.e.) *and Gilbert v. Haigler,* 363 S.W.2d 337, 342–43 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.) (comparison with other awards helpful in determining excessiveness or inadequacy of awards).

■ This Court recognizes the differences of opinion on this particular point. Common sense dictates, however, that reference to other awards is more or less useful in relation to the number of cases available for comparison as well as the similarity between those cases. Consequently, while a comparison with other

awards might serve as a point of reference, *Coastal States Gas Producing Co. v. Locker,* 436 S.W.2d 592, 600 (Tex.Civ.App. —Houston [14th Dist.] 1968, no writ), such comparison is not controlling.

The Government calls to this Court's attention two cases in support of its contention that the present award is excessive. *Barger v. Mayor and City Council of Baltimore,* 616 F.2d 730 (4th Cir.1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 105, 66 L.Ed.2d 39 (1980); *Kubrick v. United States,* 581 F.2d 1092 (3d Cir.1978), *aff'g,* 435 F.Supp. 166 (E.D.Pa.1977), *rev'd,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).[3] Conversely, Wakefield cites to this Court one hearing loss case, *Bristol-Myers Co. v. Gonzales,* 548 S.W.2d 416 (Tex.Civ. App.—Corpus Christi 1976), *rev'd on other grounds,* 561 S.W.2d 801 (Tex.1978), as well as two cases in which large awards for mental anguish were upheld, *Moser v. Texas Trailer Corp.,* 623 F.2d 1006 (5th Cir.), *modified on other grounds,* 630 F.2d 249 (1980); *McMillin v. L.D.L.R.,* 645 S.W.2d 836 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). After careful review of each of these cases, this Court concludes that each case offers little help in our deliberations.

In *Kubrick,* the plaintiff suffered hearing loss as a result of the administration of the drug neomycin. The plaintiff was awarded a total of $320,536 of which $75,000 constituted damages for past pain and suffering, and $75,000 constituted damages for future pain and suffering. Kubrick, who was forty-eight years old at the time of his hearing loss, suffered many of the same problems as Wakefield. Both suffered tinnitus, and both developed emotional and mental problems as a result of their deafness. In *Kubrick,* however, the district court expressly found that the plaintiff was an excellent lip reader, and that the plaintiff was employable in the future. The district court also chose to credit the defendant's psychiatrist, who testified that the plaintiff could be emotionally rehabilitated with psychiatric care and that it

would only take one year of treatment to accomplish that rehabilitation. Conversely, there are no findings in the instant case that would indicate a lessening of Wakefield's emotional problems or any improvement in his ability to cope positively with his tinnitus. Thus, the two cases cannot be said to be genuinely comparable.

In *Barger,* two plaintiffs suffered loss of hearing as a result of their exposure to the noise of the engines on the City's fireboats. Plaintiff Barger was awarded $153,000 in damages of which $101,000 was for lost wages leaving at the most $52,000 for pain, suffering, and mental anguish. Plaintiff Iwancio was awarded $112,500 of which $75,000 was for lost wages leaving a maximum of $37,500 for pain, suffering, and mental anguish. The opinion, however, does not indicate the extent of hearing loss suffered by each plaintiff, the extent of mental and emotional problems suffered by each plaintiff as a result of his hearing loss, or whether either plaintiff suffered from tinnitus. Given that Wakefield is totally deaf, that he suffers from irreversible tinnitus, and is experiencing mental and emotional difficulties, it would not be just to compare his award with the award in *Barger.* Thus, the *Barger* case offers little help to this Court's deliberations.

Wakefield cites this Court to the *Gonzales* case. In that case, the plaintiff suffered complete hearing loss from the administration of two drugs—kanamycin and neomycin. Gonzales was awarded $800,000 for past and future lost wages, physical impairment, and past and future mental anguish. Gonzales was twenty-five years old at the time of the injury and had an expected working life of twenty-six more years. While Gonzales suffered some of the symptoms and problems that Wakefield suffers, it is impossible for this Court to segregate the portion of Gonzales' award that was compensation for lost earnings from that portion awarded for mental anguish. We decline to speculate on this division. Consequently, the *Gonzales* case is also of little help to this Court.

---

**3.** *Kubrick* was reversed on a statute of limitations point and the Supreme Court did not make

any comment regarding the damages award in that case.

Wakefield also refers this Court to two cases in which substantial awards for mental anguish were affirmed. In *Moser*, this Court affirmed a total award of $884,-786.55 of which $511,000 was for pain and mental anguish. There, the plaintiff was injured when he fell two stories to the deck of a barge. The plaintiff suffered a skull fracture, fractured ribs, injury to his right arm, and other less severe injuries. The plaintiff suffered a relatively minor permanent physical disability. The plaintiff, however, suffered serious emotional problems as a result of the injury. Even in the face of evidence that the plaintiff was able to participate in sports activities, this Court affirmed the mental anguish portion of the award because there was evidence that the plaintiff suffered emotional problems and headaches; had difficulty sleeping, concentrating, and performing simple tasks; was subject to violent behavior; had suicidal tendencies; and had other problems as a result of the accident. In *McMillin*, the plaintiff was injured as a result of a negligently performed operation and suffered continuing pain as well as complete sexual dysfunction. An award of $800,000 for pain and mental anguish was upheld in that case. *McMillin* and *Moser* are both factually dissimilar from the present case, as are the other cases discussed. *McMillin* and *Moser*, however, demonstrate that significant mental anguish awards have been upheld if the facts of the case supported the awards.

Because the cases cited to this Court dealing with hearing loss are of very limited value in determining the excessiveness of the present award, this Court is essentially left with reviewing the facts of this case to determine if they support this award. We conclude that although the award is in the upper range of acceptable awards, it is not based on bias, passion, prejudice, corruption, or other improper motive. Likewise, it is not so large as to shock the judicial conscience, nor can we say that the amount awarded exceeds the amount that *any* reasonable man could feel that Wakefield was entitled to receive.

We note several factors that lead to this conclusion. First, Wakefield suffers from tinnitus. The constant ringing or buzzing in his ears causes Wakefield headaches and interferes with his ability to sleep. Moreover, even though Wakefield was totally disabled upon entering the VAMC, he appears to have had an acceptable quality of life; he enjoyed watching television, listening to music, and socializing. Wakefield's permanent and total loss of hearing, along with the other attendant injuries, has taken even those pleasures from him. Wakefield has become more irritable than before; he has lost his enjoyment in living; and he has withdrawn socially from both his friends and his family. He is afraid and lonely.

## IV.  CONCLUSION

The able and experienced district court judge undoubtedly gave careful and deliberate attention to the award made. If there is distortion in the award made (and of course we do not so find), we cannot say that it is so exaggerated as to indicate bias, passion, prejudice, corruption or any other improper motive; indeed, it does not exceed that amount that *any* reasonable man could feel the claimant is entitled to receive. The judgment of the district court is

AFFIRMED.