DENNIS, Circuit Judge,
specially concurring.
I disagree with the majority opinion insofar as it reviews the excessiveness of Ms. Thomas’s award by comparison to amounts awarded in prior cases. This practice is highly suspect and contrary to controlling law in this circuit. Although judgments in comparable cases may provide some frame of reference when reviewing awards for excessiveness, they do not control our assessment of an individual case. The proper focus of our inquiry is whether, based on the facts in the record, the award is entirely disproportionate to the injury sustained, not whether the award is greater or smaller than awards granted by previous juries. Because I agree, however, that $50,000 is the most that a jury could have properly awarded for future emotional distress damages in this case, I concur in the judgment.
*374 I.
When reviewing jury awards for exces-siveness, we give great deference to the jury and trial judge! We review a denial of remittitur for abuse of discretion, and we order remittitur only when “the verdict is clearly excessive.”[1] As Judge Rubin expressed in Caldarera v. Eastern Airlines, Inc., an award is- “clearly excessive” only under extraordinary circumstances:
We do not reverse a jury verdict for excessiveness except on “the strongest of showings.” The jury’s award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to “shock the judicial conscience,” “so gross or inordinately large as to be contrary to right reason,” so exaggerated as to indicate “bias, passion, prejudice, corruption, or other improper motive,” or as “clearly exceedfing] that amount that any reasonable man could feel the claimant is entitled to.”[2]
Thus, although this review is necessarily subjective,[3] we do not order remittitur every time we perceive a jury award to be overly generous; rather, remittitur is justified only when the award exceeds that bounds of reason under the facts of the case.[4]
The focus of our clear excessiveness inquiry is on the facts of the case on appeal, not on the average recovery granted in like cases. A long line of precedent in this circuit establishes that “we do not determine excessiveness of damage awards by comparing verdicts in similar cases, but rather we review each case on its own facts.”[5] As early as 1959, in Fruit Industries, Inc. v. Petty, we stated that “[c]om-parison of verdicts rendered in different cases is not a satisfactory method for determining excessiveness vel non in a particular case and ... each case must be determined on its own facts.”[6] Although we have acknowledged a limited role for comparing awards in similar cases to gauge the excessiveness of a given award, such comparisons serve only as a point of reference and are in no way controlling.[7]
*375 Despite the well-established and limited role for case comparisons in this circuit, the majority opinion moves comparability to the forefront of our excessiveness inquiry. According to the majority, an award is upheld if it falls within the range of acceptable awards established by prior cases; only after this acceptable award-range is established does the majority consider the facts supporting Ms. Thomas’s award.
The majority opinion is not the first case from this circuit to deviate from our comparability case law; at least one other case from this circuit has employed the same faulty analysis.[8] This year, in Salinas v. O’Neill, a panel of this court stated that “[a] mainstay of the excessiveness determination is comparison to awards for similar injuries.”[9] To support this statement, the Salinas court relied on Dixon v. International Harvester Co.,[10] the same 1985 opinion that the majority uses to justify its comparability analysis in the present case. But Dixon plainly does not state that case comparisons are the “mainstay” of our ex-cessiveness review; rather, it states that “prior awards may be of some aid when the present award is shown to be greatly disproportionate to past awards for similar injuries.” [11] For this more modest claim, Dixon relies on Haley v. Pan American World Airways, Inc.[12]
Haley, which is a Louisiana diversity case, actually states that comparability provides little value in determining the excessiveness of a given award, and it applies a case comparison only because Louisiana had approved of the methodology to some extent:
We recognize, as does the Louisiana Supreme Court, that an examination of such prior awards is of limited use in assessing the particular damages suffered by these particular claimants under these particular circumstances. However, as the Louisiana Court also appreciates, prior awards may be of some aid in determining excessiveness when “the present award is shown to be greatly disproportionate to past awards ... for ... ‘similar’ injuries.” [13]
In other words, Haley engaged in a jury award comparison in accordance with Louisiana law, not federal law. The case in no way suggests that comparability is the “mainstay” of the clear excessiveness inquiry under federal law. Thus, through two inaccurate citations, the law of comparability in this circuit has been materially misstated.
To the extent that the majority opinion and similar non-controlling Fifth Circuit cases conflict with our long-standing precedent on comparing jury awards, they are not binding precedent in this circuit. Under our prior precedent rule, “the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel’s holding is overruled by the Court sitting en banc or by the Supreme *376 Court.”[14] Thus, in accordance with this circuit’s prior holdings, a jury award is excessive only if it shocks the judicial conscience. Although case comparisons may serve a secondary role in providing a rough guide to our excessiveness inquiry, they are not controlling. The mere fact that an award is greater or less than awards in comparable cases does not justify ordering remittitur.
II.
Sound policy arguments support this circuit’s limited reliance on past awards when determining excessiveness in subsequent cases. The assessment of damages for emotional distress is so fact-driven and so largely a matter of judgment that we are rightfully hesitant to substitute our views for those of the jury.[15] Unlike the jury, we are limited to reviewing a “cold record.” [16] The jury, who has the benefit of hearing live testimony and observing witness demeanor, is more qualified to determine the appropriate amount of emotional distress damages. To paraphrase Judge Rubin in Caldarera, the jury has seen the parties and heard the evidence; we have only read papers.[17]
The limitations of our hindsight review are amplified when we attempt to examine awards granted in prior cases. When reviewing prior cases, we lack even the benefit of a “cold record.” Even our most thorough opinions provide only summaries of the evidence presented at trial. For instance, the majority compares the present case to Giles v. General Electric Co., an employment discrimination case involving the remittitur of an emotional distress award.[18] The Giles opinion, however, summarizes the facts relevant to the emotional distress award in only two sentences:
Giles testified that he has had trouble sleeping, suffered headaches and marital difficulties, and lost the prestige and social connections associated with his position at GE and his service as treasurer of the local union. Joyner testified that Giles appeared “despondent, depressed, down and absolutely utterly discouraged about not being able to come back to work.”[19]
Without more insight into the nature and quality of this testimony, the Giles opinion provides little guidance in our determination of whether $100,000 was an excessive award under the facts of this case. Unless we aim to create an award schedule for intangible injuries like sleeplessness, marital difficulties, and loss of prestige, I see no way of determining whether a subsequent award is excessive based on the factual summary provided in Giles.[20]
*377 In addition to the problems associated with our lack of information about past jury awards, there is the separate concern of deciding which past awards we should consider. In order to establish the permissible range for Title VII emotion distress awards, the majority considers five employment discrimination cases in which we approved six-figure emotional distress awards. Three of those opinions, Forsyth[21] Rizzo,[22] and Williams[23] are of little value to our excessiveness inquiry. None of those cases involves a remittitur or a damage award that was found to be excessive. As we have stated at least twice before, cases in which a jury verdict is upheld “shed no light on how high an award must be to be ‘excessive.’”[24] In other words, our decision to affirm a jury award only indicates that the given award was not excessive; it says nothing about the maximum award that could have been awarded under those facts.
Finally, even assuming that we analyze the appropriate cases, the information that those cases provide is of questionable value. First, the sample size of relevant cases is often too small to realize any sort average maximum award.[25] Many of our cases employing case comparisons analyze fewer than three cases to determine whether a given award is clearly excessive.[26] Second, there is no reason to assume that a value assigned to a particular injury by a prior jury is any more correct than the value assigned by a subsequent jury. Dignitary injuries like emotional distress are necessarily based on the decision-maker’s subjective impressions.[27] It seems hopelessly arbitrary to gauge the excessiveness of all future emotional distress awards against a handful of prior awards that are not based on objective criteria.
III.
Despite my fundamental disagreement with the case-comparison methodology employed by the majority, I concur in the result rendered. In the present case, the evidence cannot support an award for $100,000 in future damages. As discussed in Section IV. C. of the majority opinion, Ms. Thomas’s emotional distress evidence is predominantly attributable to her past emotional distress award. The record indicates that Ms. Thomas now works at another unit and is no longer serving under racially discriminating supervisors. Every witness testifying about her emotional state, including Ms. Thomas herself, stated that her condition has improved *378 since her transfer from the Estelle Unit. The only evidence that Ms. Thomas will suffer future emotional distress was Thomas’s testimony that she fears that she will never be promoted and her continued stress and fatigue. It seems patently excessive to award Ms. Thomas over three times the amount of damages that the jury awarded her for her past emotional distress (which was demonstrably more severe than her future emotional distress). I agree with my colleagues that $75,000 is the most that the could have reasonably awarded and is therefore the appropriate level of remittitur.

. Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 183 (5th Cir.1995).

. 705 F.2d 778, 784 (5th Cir.1983).

. Caldarera v. E. Airlines, Inc., 705 F.2d 778, 784 (5th Cir.1983) (internal citations omitted).

. Wakefield v. United States, 765 F.2d 55, 59 (5th Cir.1985).

. Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1356 (5th Cir.1988); accord Hernandez v. M/V Rajaan, 841 F.2d 582, 587 (5th Cir.1988) ("An appellate court may not determine excessiveness by comparing verdicts in similar cases, but rather must review each' case on its own facts.”); Winbourne v. E. Airlines, Inc., 758 F.2d 1016, 1018 (5th Cir.1984) ("We cannot judge the justification of damages by mere comparison with the awards upheld or reversed in other cases. Each case presents its own facts.”); Sosa v. M/V Lago Izabal, 736 F.2d 1028, 1035 (5th Cir.1984) ("[W]e do not determine excessiveness by comparing verdicts rendered in different cases; each case must be determined on its own facts."); Allen v. Seacoast Prods., Inc., 623 F.2d 355, 365 (5th Cir.1980) (quoting Fruit Indus., Inc. v. Petty, 268 F.2d 391, 395 (5th Cir.1959)); Wiley v. Stensaker Schiffahrtsges, 557 F.2d 1168, 1172 (5th Cir.1977) (quoting Petty, 268 F.2d at 395).

. Petty, 268 F.2d at 395.

. Wheat v. United States, 860 F.2d 1256, 1259-60 (5th Cir.1989) ("[D]amage awards in analagous [sic] cases provide an objective frame of reference, but they do not control our assessment of individual circumstances.”); Wakefield, 765 F.2d at 59-60 (“[W]hile comparison with other awards might serve as a point of reference, such comparison is not controlling.”); see also In re Air Crash Disaster Near New Orleans, 767 *375 F.2d 1151, 1160 (5th Cir.1985) (Tate, J., dissenting) ("Essentially, it is only after an appellate court determines that an award is excessive under federal standards of appellate review, that utilization of past awards may become relevant in determining the amount to which a jury award should be reduced. ... ”).

. See Salinas v. O'Neill, 286 F.3d 827, 830 (5th Cir.2002).

. Id.

. 754 F.2d 573 (5th Cir.1985).

. Id. at 589 (emphasis added).

. 746 F.2d 311 (5th Cir.1984).

. Id. at 318 (quoting Reck v. Stevens, 373 So.2d 498, 500-01 (La. 1979)) (internal citations omitted).

. United States v. Ocean Bulk Ships, Inc., 248 F.3d 331, 340 n. 2 (5th Cir.2001) (citing Smith v. GTE, 236 F.3d 1292, 1300 n. 8 (5th Cir.2001)).

. See, e.g., Caldarera v. E. Airlines, Inc., 705 F.2d 778, 783 (5th Cir.1983); Shows v. Jamison Bedding, Inc., 671 F.2d 927, 934 (5th Cir.1982).

. See In re Clay, 35 F.3d 190, 194 (5th Cir.1994) ("[A] cold record cannot capture the atmosphere, the expressions, the attitudes that are the marrow of a jury trial.”); accord Caldarera, 705 F.2d at 782 ("Our review is not only hindsight, but is based on a written record with no ability to assess the impact of the statement on the jury or to sense the atmosphere of the courtroom.”).

. Caldarera, 705 F.2d at 782.

. 245 F.3d 474 (5th Cir.2001).

. Id. at 488.

. As one observer has commented, "The doctrine of comparability is based on the erroneous assumption that plaintiffs with the same or similar causes of action must have suffered similar injuries; therefore, the amounts awarded to compensate those plaintiffs should be comparable.” J. Patrick Elsev- *377 ier, Note, Out-of-Line: Federal Courts Using Comparability to Review Damage Awards, 33 Ga. L.Rev. 243, 259 (1998) (analyzing the variance of damage awards in the Seventh Circuit strip search cases).

. Forsyth v. City of Dallas, 91 F.3d 769 (1996).

. Rizzo v. Children’s World Learning Ctrs. Inc., 173 F.3d 254 (1999).

. Williams v. Trader Publ'g Co., 218 F.3d 481 (2000).

. Shows, 671 F.2d at 934 ("In most of these cases ... the jury verdicts were upheld, and they thus shed no light on how high an award must be to be 'excessive.' ”); accord In re Air Crash Disaster Near New Orleans, 767 F.2d at 1156 ("Of course, simply because certain awards have been affirmed does not indicate that these are the highest, or even near the highest awards which might be allowed.”).

. See Elsevier, supra note 20, at 265-66.

. See, e.g., Salinas v. O’Neill, 286 F.3d 827, 831 (5th Cir.2002) (comparing the award to two cases); Giles v. Gen. Elec. Co., 245 F.3d 474, 489 (5th Cir.2001) (comparing the award to one other case).

. Forsyth v. City of Dallas, 91 F.3d 769, 774 (1996) ("Judgments regarding noneconomic damages are notoriously variable.”).